IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICK M. GREVE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:16-cv-0372 |
| | ) JURY DEMAND |
| AUSTIN J. BASS, OLEG BULUT and | ) |
| M STREET ENTERTAINMENT | ) JUDGE CAMPBELL |
| GROUP, | ) MAGISTRATE JUDGE HOLMES |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

Pending before the Court is Defendant M Street Entertainment Group and Oleg Bulut's (Doc. No. 50) Motion for Summary Judgement and Defendant Austin Bass's Motion for Summary Judgment (Doc. No. 53). Plaintiff has responded in opposition to each motion (Doc. Nos. 66, 67) and Defendant Austin Bass has replied. (Doc. No. 68). For the reasons discussed below, Defendant Austin Bass's motion for summary judgment is **GRANTED**, and Defendant M Street Entertainment Group and Oleg Bulut's motion for summary judgment is **GRANTED**.

I. **FACTUAL BACKGROUND**

Jack Gavin ("Gavin") hired Patrick Greve ("Plaintiff"), to work a private event for recording artist Erica Nicole at a local Nashville Restaurant/Club known as Citizen (the "Club") on February 24, 2015. (Doc. No. 64 ¶¶ 1, 2). Plaintiff's duties at the Club included working as a general gopher or roadie, setting up and breaking down the stage, and take photographs. (*Id*. ¶ 3). Howard Bennett ("Bennett") served as the production manager and sound engineer for the Erica Nicole event, and Austin Rothrock ("Rothrock") and Kendal Kramer ("Kramer") were also hired to work as part of the stage crew. (*Id*. ¶ 5). During the event, Plaintiff drank some alcoholic

1

beverages and said hello to Oleg Bulut ("Mr. Bulut"), the manager of the Club, as Mr. Bulut passed through the kitchen. (*Id.* ¶¶ 8-9).

After the event, Plaintiff believed his shift was over, but Gavin asked Plaintiff to help Kramer and Rothrock load up the truck. (*Id.* ¶ 6). The truck used by Plaintiff, Kramer, and Rothrock to reload the equipment was stationed at the end of the ramp to the Club, and anyone who stepped out six or seven steps from the Club front door would have been able to see the flatbed truck. (*Id.* ¶ 7). After loading out the stage equipment, Plaintiff tried to open the door to the Club and discovered it was locked. (Doc. No. 63 ¶ 1). When Plaintiff realized he could not reenter the Club, Plaintiff began telephoning Gavin and searched for Gavin's vehicle, which was parked in the Whiskey Kitchen parking lot across the street from the Club. (Doc. No. 64 ¶ 12). When Kramer realized he was locked out he went around the building banging on doors and shouting, and ultimately found a piece of conduit and used it to open the front door to the Club. (*Id.* ¶ 11). Kramer recalls the alarm to the Club going off when the door opened, but no other person was with him when he pried open the door. (*Id.*). When Plaintiff returned to the Club from a nearby parking lot, Kramer and Rothrock informed Plaintiff they had their stuff and drove away, leaving Plaintiff. (*Id.* ¶ 13).

After Kramer and Rothrock drove away, Plaintiff tried to open the front door to get his coat, tie, shirt, and camera bag from inside the Club, and the door handle fell off. (*Id.* ¶¶ 14-15). Once the door handle to the Club came off in his hand, Plaintiff wrapped himself in a tablecloth and waited for someone to show up since Gavin was his ride home. (*Id.* ¶ 17). Plaintiff heard the alarm going off at the Club before the police officers arrived. (*Id.* ¶ 18). The first person to arrive was Officer Austin Bass ("Office Bass") of the Metro Nashville Police Department. (*Id.*). When Officer Bass saw Plaintiff, Plaintiff was wearing a tablecloth, and Officer Bass understood he was

responding to a possible burglary. (*Id.* ¶ 19). Office Bass arrived at 2:00am the morning of February 24, 2015. (*Id.* ¶ 20). Officer Bass testified it was cold, Plaintiff was not wearing adequate clothing and the Club alarm was going off. (*Id.*). Officer Bass approached Plaintiff, who informed Officer Bass that he needed his coat and other belongings from inside the Club. (*Id.* ¶ 22). Officer Bass then placed Plaintiff in handcuffs and inside the police car. (*Id.* ¶ 23). Mr. Bulut returned to the Club in response to being told the Club alarm was going off. (*Id.* ¶ 24). Mr. Bulut was asked by Officer Bass whether Plaintiff was authorized to be at the Club at that time or to reenter the building; Mr. Bulut replied he was not. (*Id.* ¶ 26). Mr. Bulut then entered the Club to disable the alarm and walk through the building with police officers to determine if anything was missing or out of place. (*Id.* ¶ 28).

After speaking with Mr. Bulut, Officer Bass charged Plaintiff with attempted burglary and public intoxication. (*Id.* ¶ 34). A Night Court Commissioner found probable cause for the charges of attempted burglary and public intoxication. (Doc. Nos. 53-6, 53-8). On June 1, 2015, the two criminal charges initiated against Plaintiff were dismissed without trial, with those dismissals being the final disposition of the charges. (Doc. No. 1 at 5.5). On February 25, 2016, Plaintiff filed a Complaint against Officer Bass, Metropolitan Government of Nashville-Davidson County[1], Mr. Bulut, and M Street Entertainment Group alleging violations of the Fourth Amendment under Section 1983, Defamation[2], and Malicious Prosecution. In response, Officer Bass argues qualified immunity shields him because he had probable cause to arrest Plaintiff and is entitled to summary judgment on the Fourth Amendment false arrest and malicious prosecution claims. (Doc. No. 53).

---

[1] Dismissed from the case on March 3, 2017. (Doc. No. 47).

[2] Plaintiff concedes that his defamation claim should be dismissed because it was filed beyond the six-month statute of limitations. (Doc. No. 66 at 14).

Mr. Bulut and M Street Entertainment Group (collectively "Defendants") argue Plaintiff's malicious prosecution claim fails because Defendants did not institute or further the prosecution of Plaintiff. (Doc. No. 50).

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

**A. Qualified Immunity Analysis for Officer Bass**

Officer Bass moves for summary judgment on both the § 1983 false arrest and malicious prosecution claims on the basis of qualified immunity. (Doc. No. 54 at 8-9). Qualified immunity is an "immunity from suit" available to government officials performing discretionary functions, *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), protecting them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officer Bass argues he is entitled to qualified immunity on both counts because probable cause existed to arrest Plaintiff for attempted burglary and public intoxication. (Doc. No. 54 at 15).

**1. Standard**

The Supreme Court set forth the standard for qualified immunity suits:

> In [*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001)], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232. In evaluating if a defendant is entitled to qualified immunity, the Court must adopt "the plaintiff's version of the facts ... unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Soudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 565 (6th Cir. 2013) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The plaintiff "has the burden to prove that a right is clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir.

2004)). When, on summary judgment, "the legal question of immunity is completely dependent upon which view of the disputed facts is accepted by the jury," then summary judgment must be denied. *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Brandenburg v. Cureton*, 882, F.2d 211, 216 (6th Cir. 1989)). Tennessee applies the same qualified, or "good faith," immunity standard and analysis to malicious prosecution claims. *Willis v. Neal*, 247 Fed. Appx. 730, 745 (6th Cir. 2007) (citing *Rogers v. Goodling*, 84 Fed. Appx. 473, 477 (6th Cir. 2003)).

   2. **Governing Law**

Plaintiff alleges violations of 42 U.S.C. § 1983 for false arrest, in violation of the Fourth Amendment, and a state law malicious prosecution claim. To prove a false arrest claim, Plaintiff must prove the "arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, OH.*, 412 F.3d 669, 677 (6th Cir. 2005)). For Plaintiff to prove his Tennessee malicious prosecution claim, Plaintiff must prove: (1) a prior suit or judicial proceeding was instituted without probable cause; (2) defendant brought such prior action with malice; and (3) the prior action was finally terminated in the plaintiff's favor. *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992).

   3. **Probable Cause**

A finding that probable cause existed for Officer Bass to arrest Plaintiff would defeat all of Plaintiff's claims because both claims require a finding of no probable cause. *Sykes. v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (false arrest claims); *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005) (malicious prosecution claims); *Roberts*, 842 S.W.2d at 247-48 (Tennessee malicious prosecution). Probable cause for an arrest exists when the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one

of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979).

Officer Bass argues probable cause to arrest Plaintiff existed based on the facts known at the time. (Doc. No. 54 at 10). Officer Bass had probable cause to arrest Plaintiff for attempted burglary[3] and public intoxication[4] and had no duty to credit Plaintiff's claims of innocence over the statements of Mr. Bulut, who stated that Plaintiff had no business at the Club after hours. (*Id.*). Officer Bass asserts that the following facts were known to him at the time of Plaintiff's arrest: (1) Plaintiff was outside the Club at 2:00 a.m. wrapped in a table cloth, (2) Plaintiff had pulled the door knob off the Club door, (3) the broken door knob and surrounding wood were on the ground, (4) Plaintiff appeared intoxicated as evidenced by bloodshot watery eyes, slurred speech, and a sense of being lost, and (5) Mr. Bulut, who Plaintiff said could identify him as a worker rather than a potential burglar, told Officer Bass that Plaintiff was not authorized to be at the Club. (Doc. No. 54 at 10). Officer Bass argues he arrived at the Club because the alarm had been activated causing the alarm company to notify the Metro Police Department. (Doc. No. 63 ¶ 5).When Office Bass arrived Plaintiff was standing outside of a locked door with a broken handle at his feet and Mr.

---

[3] Tennessee law defines public intoxication as:

> (a) A person commits the offense of public intoxication who appears in a public place under the influence of a controlled substance, controlled substance analogue or any other intoxicating substance to the degree that:
> (1) The offender may be endangered;
> (2) There is endangerment to other persons or property; or
> (3) The offender unreasonably annoys people in the vicinity.

Tenn. Code Ann. § 39-17-310.

[4] Attempted burglary under Tennessee law is defined, in relevant part, as an attempt to enter a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft, or assault. *See* Tenn. Code Ann. § 39-14-402; Tenn. Code Ann. § 39-12-101.

7

Bulut informed Officer Bass that Plaintiff had no business inside the Club. (Doc. No. 54 at 10-11). Thus, Office Bass argues he had probable cause to arrest Plaintiff for attempted burglary. (*Id.*). As far as the public intoxication offense, Officer Bass asserts Plaintiff admits to having consumed alcoholic beverages, was standing outside wrapped in a table cloth at 2 a.m., and property had already been endangered after Plaintiff broke the Club's door handle.[5] (*Id.*). Therefore, there was probable cause for Plaintiff's arrest on the public intoxication charge. (*Id.*). Finally, Officer Bass asserts the arrest warrants, signed by a judicial commissioner, conclusively establishes probable cause for Plaintiff's arrest. (*Id.* at 12; Doc. No. 53-6, 53-8).[6]

Plaintiff argues the lack of probable cause for many reasons. (Doc. No. 67 at 14). First, Plaintiff testified Officer Bass arrested him immediately after confronting him at the Club and before obtaining any evidence that Plaintiff had participated or intended to commit a criminal offense. (*Id.*). Plaintiff argues he informed Officer Bass that he had been locked out the Club and left something inside, which is the reason he was waiting outside in a tablecloth. (*Id.*). Second,

---

[5] Officer Bass also argues that even though Plaintiff was not charged, Officer Bass had probable cause to arrest Plaintiff for the offense of vandalism. (Doc. No. 54 at 12). Officer Bass asserts that "probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was actually arrested on additional or different charges for which there was no probable cause." (*Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Tennessee Code Annotated § 39-14-408, in relevant part, states:

> (b) A person commits the offense of vandalism who knowingly:
> (1) Causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent...

Because Plaintiff admits to breaking the door of the Club and was found by Office Bass standing by the broken door, Officer Bass had probable cause to arrest Plaintiff for vandalism. (Doc. No. 54 at 12). However, given the Court's other holdings herein, this determination does not impact the outcome of this case.

[6] Officer Bass asserts the same facts in the attempted burglary and public intoxication arrest warrant affidavits that he does in his summary judgment brief and undisputed facts. *See* Doc. No. 54; Doc. No. 53-6; Doc. No. 53-8; Doc. No. 63.

8

Plaintiff argues Officer Bass had no interest in learning the facts and instead was more interested in provoking the Plaintiff. (*Id.*). Plaintiff asserts Officer Bass's walk-though of the Club failed to pursue tangible, easily accessible exculpatory evidence, which fails the Fourth Amendment's "reasonableness test" because his belongings were in plain view. (*Id.* 14-15). Third, Plaintiff argues Officer Bass had no knowledge of the facts essential to justify charges for attempted burglary and public intoxication because: (1) Officer Bass had no evidence Plaintiff had been inside the Club other than as an authorized worker, (2) that Plaintiff had damaged the door, or (3) Plaintiff did not possess any intent or motive to commit a crime in the Club. (*Id.* at 15). Fourth, Plaintiff argues there is conflicting evidence about whether Plaintiff was intoxicated. (*Id.*). Plaintiff asserts he was not drunk and had not had a drink for over two hours, Mr. Bulut concluded Plaintiff posed no danger, and Rothrock confirms that Plaintiff was loading items onto the truck effectively and did not appear intoxicated or impaired. (*Id.*). Finally, Plaintiff argues the arrest warrants were procured with materially false statements. (*Id.* 15-16).

To determine whether Officer Bass had probable cause to arrest Plaintiff, the Court must look at the facts known to Officer Bass upon his arrival at the Club to the point of Plaintiff's arrest. The Court finds Officer Bass had a reasonable suspicion[7] that Plaintiff was in the process of committing a burglary and was publicly intoxicated based on the following: (1) Officer Bass arrived at the Club due to the alarm being activated, (2) Plaintiff was wrapped in a tablecloth outside the Club, (3) Plaintiff smelled like alcohol and Officer Bass observed Plaintiff's bloodshot, watery eyes, and (4) Plaintiff informed Officer Bass the door handle to the Club broke when he tried to open the door. (Doc. No. 63 ¶¶ 5, 6, 8; Bass Depo. at 32, Doc. No. 53-4). Officer Bass then

---

[7] Reasonable suspicion requires that an officer be able to point to specific and articulable facts, together with rational inferences drawn from these facts that reasonably suggest criminal activity has occurred or is imminent. *See Northrop v. Trippett*, 265 F.3d 372,380 (6th Cir. 2001).

handcuffed Plaintiff and escorted him to the police car to further investigate the burglary alarm call. (Bass Depo. at 16, 28, 70-71; Pl. Depo at 142-143; Doc. No. 53-1). The Sixth Circuit has explained a permissible encounter between the police and citizens allows for investigative detention, which if non-consensual, must be supported by reasonable, articulable suspicion of criminal activity. *See United States v. Waldon*, 206 F.3d 597, 602 (6th Cir. 2000). Here, the Court finds Officer Bass detained Plaintiff based on the reasonable suspicion that criminal activity had occurred or was imminent based on the activated alarm, broken door handle, and Plaintiff standing outside the Club without an articulate reason to be at the Club. (Bass Depo. at 16). After detaining Plaintiff, Officer Bass and other officers walked through the Club with Mr. Bulut. (Bass Depo. at 41). Officer Bass then asked Mr. Bulut if Plaintiff was authorized to enter the Club, and Mr. Bulut informed Officer Bass that Plaintiff was not authorized to enter the Club. (Doc. No. 63 ¶¶ 11-12). Officer Bass then placed Plaintiff under arrest and read Plaintiff his *Miranda* rights and proceeded to transport Plaintiff to the Criminal Justice Center for booking. (Pl. Depo. at 155). Probable cause to arrest Plaintiff existed because "at the moment the arrest was made … the facts and circumstances within [Officer Bass's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that a crime occurred."[8] *Johns v. Maxey*, 2008 WL 4442467, at *4 (E.D. Tenn. 2008).

---

[8] Probable cause at the time of the arrest is the critical issue, not whether all the underlying facts were ultimately proven to be true. *See Martin v. Schutzman*, 2011 WL 2192634, at *2-3 (6th Cir. 2011) (holding that "[w]hen [plaintiff] was arrested, the police and the prosecutor believed (correctly) that plaintiff's power of attorney had ended and (incorrectly) that plaintiff's father was entitled to stop making the payments. We must look at the facts and circumstances known to the police 'at the moment the arrest was made' and at the moment the charges were brought, not later, when hindsight adds clarity to the issue.") (citing *Becks v. State of Ohio*, 379 U.S. 89, 91 S. Ct. 223 (1964))).

The Court finds Officer Bass had probable cause to arrest Plaintiff, based on the facts known at the time of the arrest. Because Officer Bass did not violate Plaintiff's constitutional rights, Officer Bass is entitled to qualified immunity on Plaintiff's §1983 false arrest claim and malicious prosecution claim. Therefore, Officer Bass's motion for summary judgment is **GRANTED.**

### B. Malicious Prosecution Claim Against Oleg Bulut and M Street Entertainment Group

As previously stated, the essential elements of the common-law tort of malicious prosecution under Tennessee law are: (1) a criminal proceeding has been instituted by the defendant against the plaintiff (2) without probable cause;[9] (3) the defendant brought the prior action with malice; and (4) the prior proceeding terminated in favor of the accused. *Roberts v. Fed. Express Corp.,* 842 S.W.2d 246, 247–48 (Tenn.1992); *see also Landers v. Kroger Co.,* 539 S.W.2d 130, 131–32 (Tenn. Ct. App. 1976) (citing *F.W. Woolworth Co. v. Connors,* 222 S.W. 1053 (1920). In the present case, Mr. Bulut and M Street Entertainment Group, argue they were not responsible for "instituting" the criminal proceeding against Plaintiff. (Doc. No. 51 at 6).

Mr. Bulut and M Street Entertainment Group ("Defendants") argue Plaintiff's malicious prosecution claim must fail because Plaintiff cannot show the prosecution against him was initiated by Defendants. (Doc. No. 51 at 6). Defendants argue Officer Bass made the decision to charge Plaintiff and no documentation or evidence exists that Defendants participated in or furthered the prosecution of Plaintiff for attempted burglary or public intoxication. (*Id.*). Defendants assert Plaintiff's argument that Defendants did not take affirmative steps to stop Metro Nashville's

---

[9] As explained above, *supra* A.3, Plaintiff was arrested with probable cause. However, the Court will analyze the remaining elements for malicious prosecution against Mr. Bulut and M Street Entertainment Group.

prosecution of Plaintiff is unfounded. (*Id.* at 6-7). Defendant further argues Plaintiff's only basis to support "malice" is that Defendants could have had the charges against Plaintiff dropped, but Defendants ignored his emails. (*Id.* at 7). Defendants assert ignoring Plaintiff's emails and failing to drop charges that were not pursed by Defendants is insufficient to show malice for a malicious prosecution claim. (*Id.*).

Plaintiff responds by citing to *Trice v. McEachen*, 772 F. Supp. 2d 903 (M.D. Tenn. 2011), in which a plaintiff asserted a claim for common law prosecution. Plaintiff argues that under Tennessee law, "if a person procures a third-person to institute a criminal proceeding against another, may be liable for malicious prosecution if he actually initiated the proceedings." *Id.* (Doc. No. 66 at 15). Plaintiff argues Mr. Bulut made false statements and misrepresentations to Office Bass when Mr. Bulut stated he "had stayed late to ensure all workers and personnel on the scene had left properly and then secured the alarm" because Howard Bennett informed Mr. Bulut that belongings were still inside the Club. (*Id.* 15-16). Plaintiff further argues after he was arrested, Mr. Bulut made himself unavailable to Plaintiff, when Plaintiff attempted to inform Mr. Bulut and the Club of what had actually happened on the morning of his arrest. (*Id.* at 16).

The Court finds summary judgment is appropriate for Plaintiff's malicious prosecution claim because the record reflects Mr. Bulut simply provided an accounting of the facts within his knowledge, in good faith to Officer Bass. *See Davis v. Tenn. Wildlife Resources Agency*, 2006 WL 861352, at *5 (Tenn. Ct. App. 2006) (citing *Cohen v. Ferguson* 336 S.W.2d 949, 954 (Tenn. Ct. App. 1959)). Officer Bass asked Mr. Bulut whether Plaintiff was authorized to be at the Club or to reenter the building, and Mr. Bulut replied Plaintiff was not authorized. (Doc. No. 64 ¶ 26). Mr. Bulut then walked through the Club to disable the alarm, and Officer Bass made the decision to charge Plaintiff with attempted burglary and public intoxication. (*Id.* ¶¶ 30-31). Although Plaintiff

argues Officer Bass made the decision to charge Plaintiff based on Mr. Bulut's statements, Officer Bass acted on his own to determine whether or not there should be a criminal prosecution. *See Trice v. McEachen*, 772 F. Supp. 2d 903, 913 (M.D. Tenn. 2011) (when a person "discloses in good faith ... all facts within his knowledge having a material bearing on the question of the guilt of the person suspected and leaves it to the officer to act entirely on his own judgment and responsibility as a public officer as to whether or not there shall be a criminal prosecution, he is not liable in an action for malicious prosecution...." (quoting *Davis*, 2006 WL 861352, at *5)); *see also Cohen*, 336 S.W.2d at 954 (finding defendant did not prosecute or initiate the prosecution of plaintiff when defendant was informed a crime was being committed, called the police to investigate, and the police conducted an investigation). Plaintiff's malicious prosecution claim, therefore, fails as a matter of law based on the undisputed facts. Therefore the Court **GRANTS** Mr. Bulut and M Street Entertainment Group's motion for summary judgment.

It is so **ORDERED**.

							_____
							WILLIAM L. CAMPBELL, JR.
							UNITED STATES DISTRICT JUDGE